UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RODDRICK MONTEZ WILSON,

    Defendant-Movant,

v.

UNITED STATES OF AMERICA,

    Plaintiff-Respondent.
_____/

Case No. 1:24-cv-609

Honorable Paul L. Maloney

**OPINION AND ORDER**

Currently pending before the Court is Defendant-Movant Roddrick Montez Wilson ("Defendant")'s *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 1.) For the reasons set forth below, Defendant's motion will be denied.

**I.    Background**

On October 19, 2021, a grand jury returned an Indictment charging Defendant with: (1) possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1); (2) two counts of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1); (3) two counts of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and (4) two counts of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). *See* Indictment, *United States v. Wilson*, No. 1:21-cr-190 (W.D. Mich.) (ECF No. 1). Attorney Joanna Kloet was appointed to represent him.

On December 2, 2021, Defendant, through attorney Kloet, filed a motion to suppress, arguing that the search and seizure of Defendant's car and the fruits thereof must be suppressed. *See* Mot. to Suppress, *id.* (ECF No. 20). Six days later, attorney Kloet filed a motion to withdraw

as counsel, citing a breakdown in the attorney-client relationship. *See* Mot., *id.* (ECF No. 23). Following a hearing, the Court granted attorney Kloet's motion. *See* Order, *id.* (ECF No. 27). Attorney Richard Zambon was then appointed to represent Defendant.

On March 3, 2022, attorney Zambon filed a motion to appoint counsel and request for a hearing, citing a breakdown in the attorney-client relationship. *See* Mot., *id.* (ECF No. 29). The Court conducted a hearing on that motion, as well as the motion to suppress, on March 14, 2022. In an order entered that same day, the Court denied the motions for the reasons stated on the record at the hearing. *See* Order, *id.* (ECF No. 34).

A week later, Defendant entered into a plea agreement in which he agreed to plead guilty to Count 5 (possession with intent to distribute 500 grams or more of methamphetamine) and Count 6 (possession of a firearm in furtherance of a drug trafficking crime) of the Indictment. *See* Plea Agreement, *id.* (ECF No. 36, PageID.107). The plea agreement noted that Defendant's guilty pleas were conditional because he was reserving the right to appeal the denial of his motion to suppress. *Id.*

Defendant understood that he faced a mandatory minimum sentence of 10 years for Count 5 and a mandatory minimum sentence of 5 years, to be served consecutively to any other term of imprisonment, for Count 6. *Id.* (ECF No. 36, PageID.109). Defendant also understood that he faced a maximum of life on each count. *Id.* (ECF No. 36, PageID.108). The plea agreement set forth that Defendant "waive[d] all rights to appeal or collaterally attack [hi]s conviction, sentence, or any other matter relating to this prosecution," except with respect to certain claims. *Id.* (ECF No. 36, PageID.115–116). Specifically, Defendant could appeal or seek collateral relief with respect to the following grounds: (1) his sentence exceeded the statutory maximum; (2) his sentence was based upon an unconstitutional factor; (3) his guilty plea was involuntarily or unknowing; (4) counsel

3

rendered ineffective assistance; and (5) the denial of his motion to suppress. *Id.* (ECF No. 116). Defendant appeared before the undersigned for his change of plea hearing on March 23, 2022.

Prior to sentencing, Defendant, through attorney Zambon, filed a motion to withdraw his guilty plea and appoint new counsel. *See* Mot., *id.* (ECF No. 46). Attorney Zambon attached to that motion a letter written by Defendant. Defendant accused attorney Zambon of forcing him to take a plea offer, failing to file motions on his behalf, lying to him, and otherwise providing ineffective representation.

The Court conducted a hearing on the motion, as well as Defendant's sentencing, on June 24, 2022. The Court denied the motion to withdraw the guilty plea and appoint new counsel. *See* Order, *id.* (ECF No. 55). The Court sentenced Defendant to 216 months on Count 5 and a consecutive 60 months on Count 6, for a total of 276 months. *See* J., *id.* (ECF No. 56).

Defendant appealed, and the United States Court of Appeals for the Sixth Circuit granted attorney Zambon's motion to withdraw. *See* 6th Cir. Order, *id.* (ECF No. 60). Attorney Barry McWhirter was then appointed to represent Defendant on appeal. On appeal, Defendant challenged the denial of his motion to suppress. *See United States v. Wilson*, No. 22-1587, 2023 WL 3886406, at *1 (6th Cir. June 8, 2023).

The Sixth Circuit summarized the facts underlying Defendant's convictions as follows:

> Around midnight on June 6, 2021, Grand Rapids Police Officer Ryan Manser was patrolling a residential area in a marked police vehicle. When he approached an intersection, Manser heard a car door slam to his right and turned to observe a man (later revealed to be Wilson) in blue jeans and a t-shirt walking away from a black sedan. Wilson repeatedly looked over his shoulder at Manser's vehicle and walked with his left hand swinging freely and right hand pinned to his side. Manser then turned right at the intersection and activated the spotlight on his vehicle to better observe Wilson. As soon as he did so, Wilson bolted, running down the block and through residential foliage to evade Manser, who then noticed a dark object in Willson's [sic] right hand and suspected it was a firearm.
>
> Manser pursued and, with the assistance of other officers, located Wilson hiding on the front porch of a house in the neighborhood. The officers took Wilson into

4

> custody, searched him, and found an iPhone and a car key fob in his pockets. Manser then proceeded, with the assistance of a canine tracking Wilson's scent, to search the area where Wilson ran through the foliage. Manser found a semiautomatic handgun, another cell phone, and a container of pills—then believed to be Adderall but later revealed to be methamphetamine. The officers placed Wilson under arrest.
>
> Returning to the area where Manser had first heard a car door slam, the officers used the key fob seized from Wilson and found that it matched a black Mercedes Benz in that exact location. The officers ran a license plate check on the Mercedes and discovered the plate was registered to a different vehicle, one belonging to a woman named Kayla Shannon. They then checked the VIN number which was registered to a man named Victor Castillo. Because Wilson was under arrest and because the vehicle was not registered to him and had illegitimate license plates, police impounded the vehicle. The officers therefore searched the vehicle prior to having it towed and found a large amount of cash, sets of other vehicle keys, and numerous peach-colored pills, similar to the pills found in the foliage.

*Id.* The Sixth Circuit affirmed this Court's judgment. *Id.* at *3.

Defendant filed his § 2255 motion (ECF No. 1) and memorandum in support (ECF No. 2) on June 10, 2024. In an order (ECF No. 4) entered the next day, the Court directed the government to file a response. The government subsequently moved for an extension of time and an order authorizing the release of information subject to the attorney-client privilege. (ECF No. 6.) The Court granted that motion in an order (ECF No. 9) entered on August 2, 2024. The government filed its response (ECF No. 10) on October 30, 2024.

**II.    Standards of Review**

    **A.    Section 2255 Proceedings in General**

A federal prisoner may challenge his sentence by filing in the district court where he was sentenced a motion under 28 U.S.C. § 2255. A valid § 2255 motion requires a movant to show that "the sentence was imposed in violation of the Constitution or laws of the United States, the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Section 2255 affords relief for a claimed constitutional error only when the error had a substantial

and injurious effect or influence on the proceedings. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). Non-constitutional errors generally are outside the scope of § 2255 relief, and they should afford collateral relief only when they create a "fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process." *Id.* (internal quotation marks omitted). As a general rule, a claim not raised on direct review is procedurally defaulted and may not be raised on collateral review absent a showing of either (1) cause and actual prejudice; or (2) actual innocence. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 621–22 (1998); *United States v. Frady*, 456 U.S. 152, 167–68 (1982). A motion to vacate under § 2255 is not a substitute for direct appeal. *United States v. Duhart*, 511 F.2d 7 (6th Cir. 1975); *DiPiazza v. United States*, 471 F.2d 719 (6th Cir. 1973).

### B.     Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, a movant must prove that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the defendant in a way that led to an unreliable or fundamentally unfair outcome. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, and viewed as of the time of counsel's conduct, and judicial scrutiny of counsel's performance must be highly deferential." *Roe v. Flores-Ortega*, 528 U.S.460, 477 (2000) (internal quotation marks omitted). Counsel is not ineffective unless he or she "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. To establish prejudice, a movant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694; *see also United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc) ("[T]he threshold issue is

not whether [movant's] attorney was inadequate; rather, it is whether he was so manifestly ineffective that defeat was snatched from the hands of probable victory.").

### C. Evidentiary Hearing

The Court must hold an evidentiary hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). No hearing is required if Defendant's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quotation omitted).

## III. Discussion

Defendant raises the following grounds for relief in his § 2255 motion:

I.  [Defendant's] relationship with counsel suffered a conflict of interest, a complete breakdown in communication[,] and an irreconcilable conflict in defense tactics.

II. Defendant was improperly deemed to be a career offender under the Sentencing Guidelines and counsel was ineffective for failing to object.

III. The government omitted material and exculpatory evidence to obtain a guilty plea.

(ECF No. 2, PageID.10–18.) The government contends that Defendant's claims are meritless. (ECF No. 10.)

### A. Ground I—Relationship With Counsel

Defendant first contends that his "relationship with counsel suffered a conflict of interest, a complete breakdown in communication[,] and an irreconcilable conflict in defense tactics." (ECF No. 2, PageID.10.) Defendant argues that he "completely distrusted counsel and counsel found it difficult to devise an effective defense strategy in lieu of 'just getting it over with.'" (*Id.*, PageID.13.) Defendant suggests that counsel "argu[ed] the wrong case at [Defendant's]

7

suppression hearing[,] caus[ing] the denial of a critical aspect of [Defendant's] defense strategy." (*Id.*, PageID.14.)

First, any claim by Defendant that counsel labored under a conflict of interest is frivolous. As the Sixth Circuit recently noted regarding the standard applicable to conflict-of-interest claims raised in § 2255 motions:

> In *Cuyler v. Sullivan*, 446 U.S. 335 (1980), the Supreme Court explained that "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." *Id.* at 349–50. The Court, however, cautioned that "until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Id.* at 350. Also required in this analysis is a showing from the petitioner that the "actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348.
>
> This court has since elaborated on two common conflict-of-interest scenarios. One scenario is known as a successive-representation case, which "occurs where defense counsel has previously represented a co-defendant or trial witness." *Moss v. United States*, 323 F.3d 445, 459 (6th Cir. 2003). The other common conflict-of-interest circumstance is a multiple-concurrent-representation case, which occurs in "the simultaneous representation of two or more codefendants by [a] single attorney." *Id.* at 455 n.15.
>
> As this court has explained in *Stewart v. Wolfenbarger*, 468 F.3d 338 (6th Cir. 2006), "for [28 U.S.C.] § 2254 cases, the *Sullivan* standard does not apply to claims of conflict of interest other than multiple concurrent representation; in such cases, including successive representation, the *Strickland* standard applies." *Id.* at 351. In concluding that application of the *Sullivan* standard in successive-representation cases was not appropriate in § 2254 cases, this court observed that "[§ 2255] cases differ from § 2254 cases because a federal court is not constrained by the use of only 'clearly established Federal law, as determined by the Supreme Court . . . .' Thus a federal court has more leeway in § 2255 cases." *Id.* (citation omitted). Given the "leeway" present in § 2255 motions but absent in § 2254 petitions, there remains an open question about what standard applies to run-of-the-mill § 2255 motions alleging conflicts of interest that are not based on multiple concurrent representations.

*Ball v. United States*, No. 17-2495, 2024 WL 659981, at *4 (6th Cir. Feb. 16, 2024).

Like the Sixth Circuit in *Ball*, this Court need not determine under what standard to address Defendant's conflict-of-interest claim. Defendant sets forth no facts regarding the alleged conflict

8

of interest, and attorney Zambon does not refer to any such conflict in his affidavit. Instead, Defendant focuses his argument on his assertion that counsel did not communicate with him and form an effective defense strategy.

> Attorney Zambon has addressed Defendant's claim in his affidavit, stating:
>
> I was appointed to represent Mr. Wilson on December 14, 202[1], and began gathering necessary documents and reviewing records. I met with Mr. Wilson at the Newaygo County Jail on December 17, 2021. I continued to diligently represent Mr. Wilson including meeting with him at the Newaygo County Jail on several occasions.
>
> In addition to the December 17, 2021 date, I met with the defendant in the Newaygo County Jail on January 4, 2022, January 10, 2022, January 25, 2022, February 3, 2022, and February 17, 2022. During each of those visits the defendant terminated the conference by getting up and walking out of the interview. The defendant stated that he was "firing me" and that he "was going to get a paid attorney" and that he was going to write the court and demand a new attorney.
>
> On March 3, 2022, I drove to the Newaygo County Jail and attempted to visit the defendant. However, the defendant refused the visit and did not meet with me.
>
> During the short time the defendant would actually meet with me in the conferences, I would advise him to the best of my ability concerning the likely outcome of his case. This included his status as a Career Offender. The defendant was always unhappy with my advice and demanded that I withdraw as his counsel. This resulted in my filing [t]he Defendant's Motion to Appoint Counsel, ECF No. 29.

(ECF No. 10-1, PageID.53–54.) Attorney Zambon also states:

> Any "conflict of interest, complete breakdown in communication and conflict in defense tactics" if true, was solely the fault of the defendant. As set forth in both Motions to Withdraw as Counsel that the defendant ordered me to file, ECF No. 29 and ECF No. 46, I set forth the defendant's repeated refusals to meet with me and discuss his case with him. I also set forth the many attempts I made to meet with the defendant and his either refusing to meet with me, or quickly terminating the visit when he did not like the information I was giving him.
>
> During the hearing on the Motion to Withdraw as Counsel, ECF No. 46, the defendant admitted that he would terminate early the visits and not listen to my advice:
>
> "As far as me—us meeting in quick, that's because we wasn't getting anywhere. He felt I didn't have no say so in my own case. Like, he kept telling me, I got 40

9

> years in, I know what I'm doing, I'm a good attorney. And basically, he just disregarded anything I have to say. So it was no point in me sitting there even talking when we not getting nowhere. We just going back and forth arguing. So that was the simple fact of me ending and the means how I ended them." Motion & Sentencing Transcript, ECF No. 65, PageID.353.

(ECF No. 10-1, PageID.55–56.)

Defendant has not presented any evidence to refute attorney Zambon's statements. The record clearly reflects that any breakdowns in communication were a result of Defendant's refusal to participate in full discussions. Moreover, although Defendant suggests that counsel "argu[ed] the wrong case at [the] suppression hearing," (ECF No. 2, PageID.14), Defendant fails to provide any factual allegations to support this assertion. Likewise, Defendant fails to explain what defense strategy he wished attorney Zambon to pursue.

In any event, as thoroughly discussed *infra*, Defendant fails to demonstrate any prejudice from attorney Zambon's alleged deficiencies. Other than his self-serving statements, Defendant fails to provide any evidence that he would have foregone the plea offer and instead would have proceeded to trial. As noted below, any suggestion that Defendant would have risked being convicted of all counts set forth in the Indictment, including two § 924(c) charges that alone would have carried, at a minimum, a consecutive 10-year sentence, is wholly incredible. Accordingly, Defendant is not entitled to relief with respect to ground I.

### B.    Ground II—Career Offender Designation

In his second ground for relief, Defendant contends that his designation as a career offender under the Sentencing Guidelines violated *Alleyne v. United States*, 570 U.S. 99 (2013). (ECF No. 2, PageID.16.) He also suggests that use of one his juvenile convictions for purposes of the career offender designation was improper. (*Id.*, PageID.16–17.) Defendant faults counsel for failing to object to the career offender designation on these bases. (*Id.*, PageID.17.)

The Sentencing Guidelines provide that a defendant is a career offender if

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). The Guidelines define a "crime of violence" as

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year that (1) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2(a). A "controlled substance offense" is defined as

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that (1) prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense; or (2) is an offense described in 46 U.S.C. § 70503(a) or § 70506(b).

*Id.* § 4B1.2(b).

Here, the Probation Officer who prepared Defendant's Presentence Investigation Report (PSR) determined that Defendant's two prior state convictions for unarmed robbery and armed robbery qualified as crimes of violence for purposes of the career offender designation. *See* PSR, *United States v. Wilson*, No. 1:21-cr-190 (W.D. Mich.) (ECF No. 44, PageID.167–169). Defendant was convicted of unarmed robbery in the 17th Circuit Court—Family Division when he was 15 years old. *Id.* (ECF No. 44, PageID.167). Although Defendant was sentenced as an adult, the trial court "ordered a blended delayed sentence, and he was placed on juvenile probation." *Id.* (ECF No. 44, PageID.168). Defendant's probation was later revoked, and he was sentenced to 86 to 180 months of incarceration. *Id.* (ECF No. 44, PageID.167–168). When Defendant was 17, he was convicted of armed robbery in the 17th Circuit Court. *Id.* (ECF No. 44, PageID.168).

11

Defendant first suggests that the career offender designation violated the Supreme Court's decision in *Alleyne.* Prior to *Alleyne*, the Supreme Court had held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). In the subsequent case of *Blakely v. Washington*, 542 U.S. 296 (2004), the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme under which the maximum penalty could be increased by judicial fact-finding. The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, reiterating the rule that any fact that increases the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt." *See United States v. Booker*, 543 U.S. 220, 232 (2005) (citing *Blakely*, 542 U.S. at 303). Subsequently, in *Alleyne*, the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences. Specifically, in *Alleyne*, the Supreme Court concluded that "any fact that, by law, increases the penalty for a crime . . . must be submitted to the jury and found beyond a reasonable doubt." 570 U.S. at 103.

In *Alleyne*, however, the Supreme Court stated that it has "long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment." *Id.* at 116. Shortly thereafter, the Sixth Circuit explicitly held that "the career-offender guidelines, which are triggered by judicial factfinding, do not require a district court to give a defendant a higher sentence, nor do they allow a judge to impose a harsher sentence that was necessarily unavailable before." *United States v. Cooper*, 739 F.3d 873, 884 (6th Cir. 2014). Instead, the "career-offender guidelines merely advise a district court how to wield its discretion, and therefore the commands of *Alleyne* do not apply here." *Id.*; *see also United States v. Smith*, 881 F.3d 954, 960–61 (6th Cir. 2018) (noting that "a sentencing court may use the fact of a defendant's

12

recidivism to increase his sentence even if the defendant's prior convictions are neither alleged in the indictment nor found by a jury beyond a reasonable doubt"). Thus, Defendant's reliance on *Alleyne* to challenge his career offender designation is meritless, and counsel was not ineffective for failing to raise this challenge. Counsel is "not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel." *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998); *see also Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) (noting that "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial").

Defendant also suggests that these two prior convictions should not have qualified as predicates for the career offender designation because he was a juvenile when he was convicted of both offenses. Defendant's assertion is misplaced. Under the Guidelines, any "offense[] committed prior to age eighteen . . . result[ing] in [the] imposition of an adult or juvenile sentence or [a] release from confinement on that sentence within five years of the defendant's instant offense [is] counted." *See* U.S.S.G. § 4A1.2 cmt. 7. Here, Defendant was released on parole in 2018, well within the five-year period before he commenced his federal offense. *See* PSR, *United States v. Wilson*, No. 1:21-cr-190 (W.D. Mich.) (ECF No. 44, PageID.167–169).

Moreover, the Guidelines define "prior felony conviction" for purposes of the career offender designation as "a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed." *See* U.S.S.G. § 4B1.2(e)(4). Additionally,

> [a] conviction for an offense committed at age eighteen or older is an adult conviction. A conviction for an offense committed prior to age eighteen is an adult conviction if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted (e.g., a federal conviction for an offense committed prior to the defendant's eighteenth birthday is an adult conviction if the defendant was expressly proceeded against as an adult).

13

*Id.*; *see also United States v. Muhammad*, 948 F.2d 1449, 1459 (6th Cir. 1991) (noting that convictions sustained as a juvenile where the defendant was tried or convicted as an adult properly count as predicate offenses for the career offender designation). Here, Defendant's PSR suggests that he was proceeded against as an adult for both prior convictions at issue. *See* PSR, *United States v. Wilson*, No. 1:21-cr-190 (W.D. Mich.) (ECF No. 44, PageID.167–169). Thus, those two convictions were properly counted for purposes of designating Defendant as a career offender. Any argument otherwise by attorney Zambon would have been meritless. *See Ludwig*, 162 F.3d at 459; *see also Coley*, 706 F.3d at 752.

Furthermore, Defendant cannot demonstrate any prejudice from attorney Zambon's decision to not object to the career offender designation. Because of that designation, Defendant's Guidelines for Count 5 called for 262 to 327 months. *See* PSR, *United States v. Wilson*, No. 1:21-cr-190 (W.D. Mich.) (ECF No. 44, PageID.183.) Adding the 5-year consecutive sentence for Count 5 resulted in a Guidelines range of 322 to 387 months. *Id.* At sentencing, attorney Zambon pointed out Defendant's "extreme youth when he committed the offenses which place him in the career offender category." *See* Sentencing Tr., *id.* (ECF No. 65, PageID.366). The Court concluded that a "variance downward from the advisory guideline range" was appropriate given Defendant's youth and the fact that the "two offenses which categorize him as a career offender were committed when he was in his teen years." *Id.* (ECF No. 65, PageID.371). Ultimately, the Court sentenced Defendant to a total of 216 months on Count 5, and the mandatory consecutive 60 months on Count 6, for a total of 276 months. Defendant, therefore, was not sentenced within the Guidelines range called for by the career offender designation.

In sum, Defendant was properly determined to be a career offender, and counsel was not ineffective for failing to raise any objections to that designation. Defendant, therefore, is not entitled to relief with respect to ground II.

### C.     Ground III—*Brady* Violation

As his third and final ground for relief, Defendant contends that the government withheld exculpatory information in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (ECF No. 2, PageID.18.) Defendant refers to the withheld information as follows:

> In this matter, contradicting statements of the officers at the scene having probable cause to search the vehicle; that the marijuana cigar inside the vehicle was probable cause when marijuana is LEGAL in the state of Michigan or that it was never tested to see if it was marijuana or a simple cigar. [S]tating that the officer witnessed a bag of narcotics in the front seat (or [saw] inside the bag that there were narcotics in the bag) BEFORE authorization to search was given (body cam statement concludes that neither officer had jurisdiction to search and was FULLY aware of that). Or the mere fact that the vehicle sat in front of the owner's home, with a licensed owner, and the owner was NEVER contacted even when the owner was identified by law enforcement, officers never contacted the owner to get CONSENT to search the vehicle.

(*Id.*, PageID.19.) Defendant suggests that the information in question was "omitted from the proceedings by the government because it would change the entire[ty] of the Court proceedings in [Defendant's] favor, granting him the suppression and countless other ripple effects." (*Id.*, PageID.19–20.) He also suggests that the government's withholding of this information renders his guilty pleas void. (*Id.*, PageID.18.)

In *Brady*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S.Ct. 1194. There are three components to finding a *Brady* violation: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and

15

prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Prejudice (and materiality) is established by a showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 280 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)); *see also Cone v. Bell*, 556 U.S. 449, 469–70 (2009). A reasonable probability equates to a "probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682.

Defendant's somewhat cryptic description of the "exculpatory evidence" provides some clue as to the nature of the purportedly "omitted material." (ECF No. 2, PageID.18.) Defendant apparently contends that the government failed to turn over police reports and body camera footage. Attorney Zambon suggests that, in fact, he received all of the reports and body camera footage and that Defendant's description of the information indicates that Defendant received the same "evidence" that attorney Zambon received. (Zambon Aff., ECF No. 10-1, PageID.57.) Moreover, attorney Kloet's initial motion to suppress included police reports and body camera footage as exhibits. Mot. to Suppress, *United States v. Wilson*, No. 1:21-cr-190 (W.D. Mich.) (ECF No. 20).

The crux of Defendant's argument, therefore, is not that he did not receive this material, but rather that neither his counsel nor the courts recognized it as exculpatory. The problem with that argument, however, is that the information that Defendant claims is exculpatory does not impact the validity of the search under either theory offered by the government to except the search from the warrant requirement: the automobile exception or the inventory exception. *See* Mot. Hr'g Tr., *id*. (ECF No. 63).[1]

---

[1] *See also United States v. Wilson*, No. 22-1587, 2023 WL 3886406 (6th Cir. June 8, 2023), stating:
> Wilson secondly argues that the real reason for the search was investigatory. He cites the cross-examination of an officer at the scene, who, when asked whether his

16

Even assuming that the information set forth above was not disclosed to the defense, Defendant fails to demonstrate prejudice because the "result of the proceeding would [not] have been different." *Strickler*, 527 U.S. at 280. Defendant appealed the denial of his motion to suppress, and the Sixth Circuit affirmed this Court's judgment, concluding that the search and seizure of items from the vehicle did not violate the Fourth Amendment under both the inventory exception and the automobile exception. *See Wilson*, 2023 WL 3886406, at *2–3. Defendant fails to explain, and the Court fails to discern, how inclusion of the information Defendant sets forth in support of his claim would have altered that outcome in any way. Thus, the Court cannot agree with Defendant that any *Brady* violation occurred. Defendant, therefore, is not entitled to relief with respect to ground III.

In sum, the record before the Court supports a conclusion that all of Defendant's grounds for relief are meritless. Accordingly, there is no need for the Court to conduct an evidentiary hearing, and Defendant's § 2255 motion (ECF No. 1) will be denied.

## IV.   Certificate of Appealability

Under 28 U.S.C. § 2253(c)(1)(B), the Court must determine whether a certificate of

---

"real reason for searching the car" was to look for evidence of a crime, simply responded, "Yes, sir." While the Fourth Amendment certainly prohibits inventory searches that operate as a ruse for a criminal investigation, *Wells*, 495 U.S. at 4, we have previously rejected challenges to such searches based solely on the subjective motives of the officers—particularly when the inventory search was inevitable and objectively justifiable. *See Snoddy*, 976 F.3d at 636; *United States v. Kimes*, 246 F.3d 800, 805 (6th Cir. 2001). The inventory search in this case was objectively justified by standardized police procedures and did not violate the Fourth Amendment.

Even if we were to conclude that the officers' inventory search fell on the impermissible investigatory purpose side of the line, their search was valid under the automobile exception.

*Id.* at *3.

appealability should be granted. A certificate should issue if Defendant has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined Defendant's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Defendant's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Defendant's claims was debatable or wrong. Therefore, the Court will deny Defendant a certificate of appealability. Moreover, although Defendant has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Defendant might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

**V.      Conclusion**

For the foregoing reasons, the Court will deny Defendant's § 2255 motion. Accordingly,

**IT IS ORDERED** that Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

A separate judgment will follow. *See Gillis v. United States*, 729 F.3d 641, 643 (6th Cir. 2013) (requiring a separate judgment in habeas proceedings).

Dated:    December 4, 2024                                       /s/ Paul L. Maloney
                                                                               Paul L. Maloney
                                                                               United States District Judge